Case No. 23-1182

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

**ANGELO BROCK**,

*Plaintiff-Appellee*,

v.

**FLOWERS FOODS, INC.; FLOWERS BAKERIES, LLC;
FLOWERS BAKING CO. OF DENVER, LLC**,

*Defendants-Appellants.*
_____

On Appeal from the United States District Court
for the District of Colorado
Case No. 1:22-cv-02413-CNS-MEH
The Honorable Charlotte N. Sweeney

_____

**ANSWERING BRIEF OF
PLAINTIFF-APPELLEE ANGELO BROCK**
*(No Oral Argument Requested)*

_____

Shaun Markley (SBN 291785)
**NICHOLAS & TOMASEVIC, LLP**
225 Broadway, 19th Floor, San Diego, CA 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496
smarkley@nicholaslaw.org

*Counsel for Plaintiff-Appellee Angelo Brock*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

GLOSSARY .......................................................................................... viii

STATEMENT OF PRIOR OF RELATED CASES ....................................1

STATEMENT OF JURISDICTION .........................................................1

STATEMENT OF THE ISSUES ..............................................................4

INTRODUCTION ...................................................................................4

STATEMENT OF THE CASE .................................................................7

    I.      Flowers' Direct-Store Delivery Business and
           Distributor's Role ...................................................................7

    II.     The Purported Arbitration Agreement ...................................9

    III.   Procedural History ...............................................................10

STANDARD OF REVIEW .....................................................................11

SUMMARY OF THE ARGUMENT .......................................................13

ARGUMENT .........................................................................................15

    I.      The Arbitration Agreement Is Not Enforceable Under
           the FAA ...............................................................................16

          A.     Enforceability Under the FAA Comes First ...................16

          B.     The FAA Does Not Call for Arbitration of This
               Dispute ..........................................................................17

               1.     Arbitration Is Not Special or Preferred ..................17

               2.     The Class of Distributors at Issue Load and
                     Unload Bakery Products .......................................18

               3.     Distributors' Are Directly Engaged in
                     Interstate Commerce .............................................19

       4.     *Flowers Alternative Considerations Miss the Mark* ...............................................................28

**II.**    **The Arbitration Agreement Is Not Enforceable under Colorado Law** ...............................................................33

**CONCLUSION** ...............................................................37

**REQUEST FOR ORAL ARGUMENT** ...............................................................39

**CERTIFICATE OF COMPLIANCE FOR BRIEFS** ...........................................40

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Jani-King of Oklahoma, Inc.*,
   905 F.3d 1156 (10th Cir. 2018) .......................................................32

*Ansari v. Qwest Commc'ns Corp.*,
   414 F.3d 1214 (10th Cir. 2005) .........................................................2

*Beltran v. AuPairCare, Inc.*,
   907 F.3d 1240 (10th Cir. 2018) .......................................................12

*Bissonnette v. LePage Bakeries Park St., LLC*,
   33 F.4th 650 (2d Cir. 2022) ............................................................28

*Bissonnette v. LePage Bakeries Park St., LLC*,
   49 F.4th 655 (2d Cir. 2022) ......................................................29, 34

*Bissonnette v. LePage Bakeries Park St., LLC*,
   59 F.4th 594 (2d Cir. 2023) ............................................................29

*Canales v. CK Sales Co., LLC*,
   67 F.4th 38 (1st Cir. 2023)........................................................12, 23

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)........................................................................20

*Cunningham v. Lyft, Inc.*,
   17 F.4th 244 (1st Cir. 2021)............................................................26

*D.V.C Trucking, Inc. v. RMX Glob. Logistics*,
   No. CIV.A. 05-CV-00705,
   2005 WL 2044848 (D. Colo. Aug. 24, 2005)..................................31

*Fraga v. Premium Retail Servs., Inc.*,
   61 F.4th 228 (1st Cir. 2023)......................................................12, 23

*Goro v. Flowers Foods, Inc.*,
   No. 17-CV-2580 TWR (JLB),
   2021 WL 4295294 (S.D. Cal. Sept. 21, 2021)................................32

*Grohn v. Sisters of Charity Health Servs. Colorado*,
  960 P.2d 722 (Colo. App. 1998) ........................................................34

*Hamrick v. Partsfleet, LLC*,
  1 F.4th 1337 (11th Cir. 2021) ........................................................2, 3

*Hill v. Ricoh Americas Corp.*,
  603 F.3d 766 (10th Cir. 2010) ........................................................33, 37

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)........................................................33, 37

*Immediato v. Postmates, Inc.*,
  54 F.4th 67 (1st Cir. 2022)........................................................23, 26

*In re C.W. Min. Co.*,
  740 F.3d 548 (10th Cir. 2014) ........................................................35

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
  790 F.3d 1112 (10th Cir. 2015) ........................................................12

*Lambdin v. Dist. Ct. In & For 18th Jud. Dist. of Cnty. of Arapahoe*,
  903 P.2d 1126 (Colo. 1995)........................................................34

*Lopez v. Cintas Corp.*,
  47 F.4th 428 (5th Cir. 2022) ........................................................26, 27

*Mitchell v. Kraft Pizza Co.*,
  162 F. App'x 801 (10th Cir. 2006)........................................................13

*Morgan v. Sundance, Inc.*,
  142 S. Ct. 1708 (2022)........................................................17, 37

*New Prime, Inc. v. Oliveira*,
  139 S.Ct. 532 (2019)........................................................30

*Oseguera-Garcia v. Holder*,
  485 F. App'x 948 (10th Cir. 2012)........................................................13

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004) ........................................................3

*Pre-Paid Legal Servs., Inc. v. Cahill*,
786 F.3d 1287 (10th Cir. 2015) ........................................................12

*R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*,
447 F. Supp. 3d 339 (W.D. Pa. 2020)................................................30

*Rio Grande Silvery Minnow (Hybognathus amarus) v.
Bureau of Reclamation*,
599 F.3d 1165 (10th Cir. 2010) ........................................................12

*Rittmann v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) .............................................................24

*Saxon v. Southwest Airlines Co.*,
142 S. Ct. 1783 (2022)................................. 18, 19, 20, 21, 22, 25, 28

*United States v. Leffler*,
942 F.3d 1192 (10th Cir. 2019) ........................................................13

*United States v. Mora*,
293 F.3d 1213 (10th Cir. 2002) ........................................................30

*Wynn v. United Parcel Serv., Inc.*,
No. 21-CV-10029-CRB,
2022 WL 18912481 (N.D. Cal. Oct. 4, 2022) ..................................24

## STATUTES

9 U.S.C. § 1 .........................................................................................19

9 U.S.C. § 16(a)(1)(B) ......................................................................1, 2

## RULES

Fed. R. App. P. 28(a)(8)(B) ................................................................13

# GLOSSARY

**AB** – Refers to Brief of Defendants-Appellants, Document: 010110893336.

**Arbitration Agreement –** Refers to the "Arbitration Agreement" attached as Exhibit K to the Distributor Agreement. Vol. 1 App. 84-86.

**DSD** – Refers to "Direct-Store-Delivery" which is Flowers' business segment by which it utilizes the labor of Distributors to distribute its freshly baked products for Flowers' retail and foodservice customers.

**Distributors** – Refers to individuals that personally guarantee performance of the delivery and merchandizing obligations set out in Defendants' Distributor Agreement in Colorado like Mr. Brock (i.e. the class Mr. Brock seeks to represent).

**FAA** – Refers to the Federal Arbitration Act, 9 U.S.C., § 1 et seq.

**FBC Denver** – Refers to Defendant Flowers Baking Co. of Denver, LLC.

**Flowers** – Refers collectively to Appellants Flowers Foods, Inc., Flowers Bakeries, LLC, and Flowers Baking Co. of Denver, LLC.

**Order** – the lower court's Order denying Flowers' Motion to Compel Arbitration. Add. 1-17.

## STATEMENT OF PRIOR OF RELATED CASES

There are no prior or related appeals in this case. *See* 10th Cir. R. 28.2(C)(3).

## STATEMENT OF JURISDICTION

Appellee partially contests the jurisdictional statement by Appellants. *See* Brief of Defendants-Appellants, Document: 010110893336 ("AB"), 1-2. While Appellee agrees that Section 16 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(B), permits an appeal from an order denying arbitration under Section 4 of the FAA, Appellants seek broader review of the lower court's decision in this appeal. The Court should not permit that.

In the District Court, Appellants moved to compel arbitration under the FAA or, in the alternative, under Colorado state law. *See* Vol. 1 App. 26-46. On appeal, Appellants first argue that Colorado law operates differently[1] than the FAA and calls for arbitration for reasons independent of the FAA. AB, 15-21. As their introductory sentence explains: "This Court need not reach the question whether the Arbitration Agreement is exempt from the FAA, because . . . the Agreement is enforceable under Colorado Law." *Id.* at 15.

---

[1] As explained further below, Appellee does not agree that, under the specific terms of the Arbitration Agreement at issue, state law yields a different result from the FAA. The Arbitration Agreement requires that Colorado law operate consistent with the FAA.

This approach overlooks *why* this appeal is proper in the first place. Only the FAA grants an immediate right to appeal an interlocutory order denying an arbitration motion. The FAA "expressly permits an appeal from a district court's order 'denying a petition under section 4 ... to order arbitration to proceed.'" *Ansari v. Qwest Commc'ns Corp*., 414 F.3d 1214, 1217 (10th Cir. 2005) (*citing* 9 U.S.C. § 16(a)(1)(B)); *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1352 (11th Cir. 2021) ("[T]he Federal Arbitration Act carves out exceptions to the general rule allowing review of some interlocutory orders, including orders 'denying a petition under section [four] of [the Act] to order arbitration to proceed.'") (*citing* 9 U.S.C. § 16(a)(1)(B)).

Flowers pays lip services to the limited grounds for appeal. *See* AB, 1 (invoking Section 16 of the FAA). But then Flowers immediately disregards these limited grounds for appellate review at this stage and attempts to use FAA Section 16 to broaden the scope of review to include what it believes are *independent* state law grounds that warrant overturning the lower court's order. *Id.* Flowers asserts that, once FAA Section 16 jurisdiction is invoked, there is jurisdiction over "all issues disposed of," but this is not true. AB, 1-2.

As an initial matter, this is not in line with the plain text of Section 16 which permits immediate review of denial of arbitration motions brought under the FAA rather than immediate review of any denial of any arbitration motion. 9 U.S.C., §

16(a)(1)(B). What Appellants really seek is pendent appellate jurisdiction over what they see as independent, distinct state law grounds to compel arbitration. *See Hamrick*, 1 F.4th at 1352-53 (discussing such jurisdiction over state law grounds for arbitration in a FAA Section 16 context). This is a "rare" basis for jurisdiction and requires that the state law issue be "inextricably intertwined" with the question over which the court has jurisdiction. *Id.* Appellants' *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 594 (3d Cir. 2004) authority holds the same – that jurisdiction to hear state law arbitration challenges in a FAA Section 16 context "rest on the doctrine of pendent appellate jurisdiction, which is discretionary and narrow in nature." This case, too, recognizes that the state and federal issues on appeal must have "sufficient overlap in the facts relevant to both the appealable and nonappealable issues to warrant plenary review." 372 F.3d at 594.

Flowers does not endeavor to explain why there is sufficient intertwining or overlap of issues on appeal here such that the Court can take on the state law grounds under FAA Section 16. *See* AB, 1-2. Rather, it is clear from its argument it believes there is no overlap between the FAA grounds to compel arbitration and state law grounds for compelling the same. *See e.g.* AB, 16 (arguing that the FAA's transportation worker exception has "no impact on other avenues (such as state law) by which a party may compel arbitration."). For this reason, the Court should decline

to permit Flowers to argue independent state law grounds to overturn the lower court's interlocutory order regarding arbitration in this limited appeal.

## STATEMENT OF THE ISSUES

I.      Is the Arbitration Agreement enforceable under the provision calling for arbitration exclusively under the FAA? Vol. 1 App. 116-122.

II.     Is the Arbitration Agreement enforceable under the choice of law provision calling for arbitration under Colorado law not inconsistent with the FAA? Vol. 1 App. 122.

## INTRODUCTION

This appeal presents two straight-forward issues which have well-defined legal standards to help answer them. Rather than take on these issues under the defined standards, Defendants Flowers Foods, Inc., Flowers Bakeries, LLC, and Flowers Baking Co. of Denver, LLC ("FBC Denver") (collectively "Flowers") engage in a series of convoluted and misguided arguments to try to avoid the simple and well-reasoned Order (Add. 1-17) denying arbitration under the FAA and state law based on the plain terms of the Arbitration Agreement. Like the lower court, this Court should follow the established test for when a worker is exempt from the FAA and enforce the plain language of the Arbitration Agreement the parties entered. This results in no obligation to arbitrate this dispute.

The first issue is whether the relevant class of "Distributors" who receive mainly out-of-state bakery products at local warehouses in this state and deliver them to local retail stores are "engaged in foreign or interstate commerce" under Section 1 of the FAA, the so-called transportation worker exemption. The Supreme Court recently issued a seminal opinion on this topic in *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1790 (2022). *Saxon* establishes a two-part framework for analyzing FAA Section 1's transportation worker exemption: (1) define the relevant class of workers based on what they frequently do for the hiring company and not what the hiring company does generally, and (2) assess whether these workers are directly involved in transporting goods across state lines. As explained below, much like the class of workers who physically load and unload cargo on and off planes from a terminal at the airport in *Saxon*, this class of Distributors who load and unload bakery products arriving from out of state bakeries into vehicles for local retail delivery are directly involved in transportation of goods across state lines even if they never physical drive across any border.

Flowers counters by eschewing the relevant *Saxon* analysis and focusing on irrelevant considerations like whether the Distributors ever physically cross state lines and whether they work in the "transportation industry." It also attempts to raise factually incorrect arguments regarding whether there are adequate contracts for employment or personal services that it failed to raise below.

The second issue is whether Flowers' fallback language in the Arbitration Agreement that invokes Colorado law so long as it is not inconsistent with the FAA can serve as an alternative basis for compelling arbitration once the Court determines that the FAA does not apply in light of the transportation worker exemption. Because the FAA exempts transportation workers, this plain language forbids Colorado law from doing what the FAA would not – compelling arbitration of claims by a transportation worker. Such arbitration agreements must be enforced according to their terms. Furthermore, while Colorado law generally permits arbitration if the parties so agree, this is not true for wage claims which must remain in court under state law.

In response, Flowers again seeks to evade the real issue which is what the parties agreed to under the plain language of the Arbitration Agreement. It asks the Court to pretend that the Arbitration Agreement is silent on the issue of state law in the absence of the FAA's application or to ignore the requirement that Colorado law must track the FAA. Rather than engage in a hypothetical analysis of what the result would be if Flowers wrote a different agreement, the Court should enforce the terms as written.

The Court should apply the straightforward FAA Section 1 analysis under *Saxon* and enforce the plain language of the Arbitration Agreement with respect to

Colorado law compelling arbitration where the FAA would not. Doing so results in affirming the Order.

<p style="text-align:center"><b><u>STATEMENT OF THE CASE</u></b></p>

**I.      Flowers' Direct-Store Delivery Business and Distributor's Role**

Flowers generates billions in revenue each year operating the second largest baking company in the US with 85 % of its revenue flowing through its "Direct Store Delivery" ("DSD") segment. *See* Vol. 1 App. 128-132, 134-255. "[S]everal large customers" like Walmart account for the bulk of Flowers revenues. *Id.* at 141, 150.

To fulfil customer orders, Flowers operates dozens of bakeries from coast to coast to carry out a "reciprocal baking" system where various bakeries bake different products for the customers within their market as well as other markets throughout the country. *Id.* at 128-132, 153-154, 279-280 ¶¶ 8-9. Stated otherwise, "[t]he DSD distribution system involves aggregating order levels and delivering products from bakeries to independent distributors for sale and <u>direct delivery</u> to customer stores." *Id.* at 141 (emphasis added). Flowers' ultimate goal is to "deliver [fresh bakery] products directly to customers immediately after production. . . ." *Id.* at 270 ¶ 7, 281 ¶ 12.

Most products delivered to Flowers' Colorado customers are baked out of state. *Id.* at 49 ¶ 10-11. Indeed, only one type of Flowers' product (Canyon Bakehouse) is baked in Colorado. *Id.* at 280 ¶ 9. The remaining products like

Wonder Bread, Dave's Killer Bread, and Tastykake all come from out of state bakeries in states like Arizona, California, Nevada, and Texas, among other states. *Id.* at 280-281 ¶¶ 10-12, 284-285.

FBC Denver is registered with the US Department of Transportation as a motor carrier. *Id.* at 257-258. It registered as an active "Interstate" private carrier of "BAKERY PRODUCTS." *Id.*[2]

As part of its DSD business, Flowers engages "Distributors" like named Plaintiff to service local territories of blue-chip retail outlets in need of various baked goods like bread, buns, tortillas, and cakes. *Id.* at 55-56, 73, 137. Per Flowers' internal documents, "[t]he primary purpose of [Distributors] is to deliver bread products for us to our customers. . . . the [Distributor's] sole operating function is to delivery Flowers products." *Id.* at 263.

Flowers has approximately 5,800 territories throughout the US, the bulk of which are operated by Distributors. *Id.* at 141. Distributors tell Flowers how much product is needed in their territories and then Flowers bakes products pursuant to those orders and delivers the bread to the Distributors' warehouse. *Id.* at 281-282 ¶¶

---

[2] The DOT provides a "SAFER Help" page that explains the data field categories (i.e. "private (property)", "Interstate." *See* https://safer.fmcsa.dot.gov/saferhelp.aspx#Class. The Carrier Operation designation "Interstate" "[i]dentifies the carrier as being engaged in interstate . . . transport activities." *Id.* The Operation Classification "Private (property)" means FBC Denver's "highway transportation activities are incidental to, and in furtherance of, its primary business activity." *Id.*

12-14. Flowers uses a third-party logistics company to deliver products from its out-of-state bakeries to its local "warehouses" or cargo centers in Colorado. *Id.* at 281-282, ¶ 14. Flowers has over 600 local warehouses (aka distribution centers) in the US. *Id.* at 153-154. Distributors pay Flowers a "fee for warehouse use" that allows them access to the cargo areas each day. *Id.* at 61.

Plaintiff's assigned warehouse is in Denver. *Id.* at 9, ¶ 17. Plaintiff has worked full-time to deliver Flowers' products to Flowers' customers in Denver since 2016. *Id.* Plaintiff and other Distributors in Colorado arrive at their warehouses just as or hours after the out-of-state products are delivered to their warehouse and unloaded for them. *Id.* at 265-266, ¶¶ 2-4. They sign off on their orders, load their products from the warehouse onto their trucks, and begin delivering to the customers in their territory. *Id.*

## II.    The Purported Arbitration Agreement

The Distributor Agreement ("DA") has a "DISPUTE RESOLUTION" Section (18) and an attached "Arbitration Agreement" at Exhibit K. Vol. 1 App. 66-67, 84-86. The two form a single contract. Section 18 of the DA ("Dispute Resolution" clause or section) states that "DISTRIBUTOR and COMPANY shall attempt in good faith . . . to resolve and terminate any controversy, claim or dispute arising out of or relating to this [DA]. . . ." *Id.* at 66 § 18.1. "DISTRIBUTOR" is

Brock, Inc. and, pursuant to his personal guarantee of the DA, Plaintiff Brock. *Id.* at 52. "COMPANY" is FBC Denver only. *Id.*

If the covered dispute is not resolved through negotiation, the parties are to mediate. *Id.* at 66-67 § 18.2. Then there is arbitration under the Arbitration Agreement. The Arbitration Agreement calls for claims covered by the Agreement to "be submitted and determined exclusively by binding arbitration under the [FAA]" and the Agreement is "governed by the FAA and Colorado law to the extent Colorado law is *not inconsistent* with the FAA." *Id.* at 84, 86 (emphasis added).

## III.  Procedural History

On September 19, 2022, Plaintiff filed a Class and Collective Action Complaint in the U.S. District Court for the District of Colorado alleging Defendants willfully and systematically misclassify its hundreds of delivery drivers (*i.e.*, "Distributors") as "Independent Contractors." Vol. 1 App. 5-25. As such, Plaintiff contends that he is entitled to damages and penalties under the FLSA and Colorado law for things like overtime, unlawful deductions, and minimum wage violations. *Id.*

On March 6, 2023, Defendants filed its Motion to Dismiss or Stay Proceedings and Compel Individual Arbitration, requesting that the court enforce the DA's Arbitration Agreement and compel Plaintiff to individually arbitrate his claims. *Id.* at 26-46.

The district court denied Defendants' Motion, finding that Plaintiff belonged to a class of workers engaged in interstate commerce, qualifying him as a "transportation worker" exempt from the Federal Arbitration Act under 9 U.S.C. § 1. Add. 13. Accordingly, the court found the Arbitration Agreement to be unenforceable under the FAA. *Id.*

The court further found that Plaintiff's claims could not be arbitrated under Colorado's Uniform Arbitration Act as the plain language of the Arbitration Agreement called for applying Colorado law only "to the extent Colorado law is not inconsistent with the FAA." *Id.* at 14-16. Compelling transportation workers to arbitrate under the UAA would be inconsistent with the FAA which exempts such workers from arbitration obligations. *Id.*

Defendants appealed on May 24, 2023. Vol. 2 App. 316-318.

## STANDARD OF REVIEW

Defendants' AB correctly states that, as a general matter, a district court's denial of a motion to compel arbitration is reviewed *de novo*. However, Defendants' legal standard lacks nuance relevant to this case in several key respects. AB, 12-13. Some of the district court's findings and decisions receive more deferential standards of review, as explained below.

Findings of fact underlying the district court's determination that the Arbitration Agreement is unenforceable are reviewed for clear error. *See e.g.*,

*Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1252 (10th Cir. 2018) ("Any findings of fact underlying the district court's unconscionability decision are reviewed for clear error."); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115–16 (10th Cir. 2015) (reviewing district court's determination that the right to compel arbitration had been waived *de novo* but reviewing the factual findings for clear error); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1293 (10th Cir. 2015) (reviewing district court's decision as to default of arbitration *de novo* but reviewing the factual findings for clear error). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 1175 (10th Cir. 2010) (quotations omitted). Defendants' AB fails to appreciate this correct standard of review relevant to factual findings underlying the district court's analysis such as that Appellee belongs to a class of workers who load and unload Flowers' bakery products and was actively engaged in the in the transportation of Flowers' products across state lines into Colorado. Add. 12-13. *Canales v. CK Sales Co., LLC*, 67 F.4th 38, 45 (1st Cir. 2023); *Fraga v. Premium Retail Servs.*, Inc., 61 F.4th 228, 240 (1st Cir. 2023).

Appellant cannot pivot on reply to address this previously unidentified standard for the first time. Pursuant to the Federal Rules of Appellant Procedure,

Rule 28(a)(8)(B), an appellant's brief must contain "*for each issue*, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)." Fed. R. App. P. 28(a)(8)(B) (emphasis added). Defendants made no effort to do this, opting for a generic, one-size-fits-all approach to the standard of review in this matter. Furthermore, this Court does not consider issues raised for the first time in a reply brief. *See e.g.*, *United States v. Leffler*, 942 F.3d 1192, 1197-98 (10th Cir. 2019) (stating the Tenth Circuit generally does not consider arguments made for the first time in an appellant's reply brief and deems those arguments waived); *Oseguera-Garcia v. Holder*, 485 F. App'x 948, 951 (10th Cir. 2012) (same); *Mitchell v. Kraft Pizza Co.*, 162 F. App'x 801, 804 (10th Cir. 2006) (same).

## SUMMARY OF THE ARGUMENT

This Court should confirm the Order's two central holdings which will dispose of this appeal.

I.    First, the Arbitration Agreement is not enforceable under the FAA.

    A.    The Court should address this issue first because this is how Flowers proceeded in the lower court and it matches the plain text of the Arbitration Agreement which calls for exclusive application of the FAA and states that applicable law is the FAA and Colorado law to the extent it is not inconsistent with the FAA. As explained above, there

also is no jurisdiction to hear an interlocutory appeal regarding independent state law grounds for denying an arbitration motion under FAA Section 16.

**B.**     Looking at the FAA's purpose and seminal interpreting cases reveals this case falls outside its scope.

*1.*     As a threshold matter, arbitration is not "preferred." While the FAA seeks to overcome judicial hostility to arbitration, courts also may not devise novel rules that favor arbitration over proceedings in court.

*2.*     Under step 1 of the two-part *Saxon* test, the relevant class workers here are Distributors that load and unload bakery products arriving from mainly out of state bakeries for immediate delivery to in-state customers. Flowers does not appear to challenge this determination made in the lower court.

*3.*     Under Saxon step 2, Distributors are directly involved in interstate commerce because they place orders for the stores in their local territories which are fulfilled primarily by out of state bakeries. Once baked, the products are sent from out of state bakeries for delivery to Flowers' local warehouses where the

Distributors load them and take them out for immediate delivery to their in-state retail stores.

4. Rather than track the recent, seminal framework for assessing the FAA's transportation worker exemption, Flowers presents a host of irrelevant and flawed arguments that should not distract this Court from the *Saxon* two-part analysis set forth above.

II. Second, the Arbitration Agreement fairs no better under Colorado law based on the plain language of the agreement that Flowers drafted. Parties are free to agree to arbitration or not on whatever terms they want. Here, the agreement states that controlling law is the FAA and Colorado law so long as it is not inconsistent with the FAA. Because the FAA does not compel transportation workers to arbitration, Colorado law cannot do so either while complying with the plain language of the agreement.

## ARGUMENT

Flowers cannot compel arbitration of Appellee's claims under the FAA or Colorado law. While Flowers changes approach here arguing first that Colorado law compels arbitration of the claims at issue and second that FAA requires the same, Appellee will continue to follow the argument sequence addressed by the lower court under the rubric that Flowers initially presented.

Because the Arbitration Agreement is not enforceable under the FAA and because Colorado law cannot compel arbitration while remaining consistent with the FAA, this Court should affirm.

## I.     The Arbitration Agreement Is Not Enforceable Under the FAA

Flowers Colorado Distributors are a class of workers directly involved in interstate transportation of Flowers' bakery goods. The FAA does not require them to arbitrate any claims.

### A.     Enforceability Under the FAA Comes First

The first sentence of the Arbitration Agreement states defined claims between the parties "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act. . . ." *See* Vol. 1 App. 84. The end of the agreement adds a choice of law clause indicating it "shall be governed by the FAA and Colorado law to the extent Colorado law is not inconsistent with the FAA." *Id.* at 86. Thus, as Flowers appropriately recognized in the lower court, the analysis should begin with the FAA. *Id.* at 31-44. Flowers' attempt to pivot on appeal to state law with FAA backup makes little sense under the structure of its agreement and its presentation of these issues in the lower court.

Further still, as explained in the jurisdictional statement above, there is no jurisdiction to hear the independent state law challenges to the Order under the FAA.

**B.     The FAA Does Not Call for Arbitration of This Dispute**

The FAA does not call for arbitration of the instant dispute and Flowers' analysis of this issue misses the mark. As an initial matter, arbitration is not special or preferred. Rather, courts are prohibited from adopting rules favoring arbitration over litigation. *See* subsection (1), *infra*. Under the established *Saxon* two-step analysis, (1) the class of "Distributors" who "load and unload bakery products" (Add. 8-9) (see subsection (3), *infra*), (2) engage in interstate commerce (Add. 9-13) (see subsection (3), *infra*), thus making them exempt from the reach of the FAA.

Flowers' convoluted, "alternative" considerations to the FAA transportation worker analysis should be rejected. *See* subsection (4), *infra*.

### 1.     *Arbitration Is Not Special or Preferred*

Flowers' analysis begins with a flawed view of the FAA. AB, 21-22. While Flowers asks the Court to read the "federal policy favoring arbitration" in a way that skews the analysis in favor of enforcing arbitration agreements, the Supreme Court recently explained that this "policy" means something else. Arbitration is not actually "favored," rather, the FAA attempts to overcome judicial hostility to enforcing arbitration agreements and seeks to make them "as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc*., 142 S. Ct. 1708, 1713 (2022). Stated otherwise, "court[s] may not devise novel rules to favor arbitration over litigation." *Id.*

2. *The Class of Distributors at Issue Load and Unload Bakery Products*

Under the first step of *Saxon*, the "class of workers" Plaintiff belongs to depends on what "[he] does at [Flowers], not what [Flowers] does generally." *Saxon v. Southwest Airlines Co.*, 142 S. Ct. 1783, 1788 (2022) (rejecting an industry-wide approach that looks at what the hiring company does generally).

As Brock explained in the lower court, as part of Flowers' DSD business, Distributors primary purpose is to accept out-of-state bakery products upon their arrival at local cargo centers or warehouses and load them onto trucks for further delivery at retail locations throughout Colorado. *See* Statement of the Case, Section I, *supra*; *and see Saxon*, 142 S. Ct. at 1788-1789 (the class of workers "physically load and unload cargo on and off airplanes"). The lower court appropriately held that Distributors who load and unload bakery products are the class of workers at issue here. Add. 8-9.

It does not appear Flowers challenged the lower court's definition of the class of workers at issue. *See generally* AOB (making no effort to define a class of workers). Flowers' FAA analysis jumps first into whether the worker is sufficiently engaged in interstate commerce, but this is *Saxon's* second step as the lower court appropriately recognized. *Id.* at 9 (in the step one "class of worker" analysis holding that ". . . to the extent that Flowers argues that Mr. Brock belongs to a class of

workers who are not engaged in foreign or interstate commerce, this is a separate analytical exercise that the Court conducts below [under *Saxon* step two]. . . .") (*citing Saxon*, 142 S. Ct. at 1788). In short, Flowers' analytically misguided approach to the FAA exemption at issue does not challenges or addresses the relevant class of workers at issue. Flowers makes no effort to challenge the lower court's determination of the class of workers at issue under any standard. This Court should affirm on this issue.

### 3. Distributors' Are Directly Engaged in Interstate Commerce

Applying *Saxon* step two, it is clear the relevant class of Distributors that load and unload cargo coming in from out of state, much like airplane cargo loaders, are directly involved in interstate commerce under 9 U.S.C. § 1.

To begin with, there is no requirement workers themselves "physically accompany freight across state or international boundaries." *Compare Saxon*, 142 S. Ct. at 1791 *with* AOB, 23-24 (conflating movement across state lines as a FAA Section 1 requirement). Instead, the question is whether the workers are "directly involved in" the transportation of goods crossing state borders. *Id.* 1789 (interpreting what it means to be "engaged in [interstate] commerce"). *Saxon* found it "too plain to require discussion" that workers who load or unload goods from a truck (e.g., carriers) or a plane traveling interstate are directly involved in interstate transportation under the FAA. *Id.* This kind of involvement in the interstate journey

of the goods is, "as a practical matter, part of the interstate transportation of goods." *Id.* at 1789. Otherwise framed, transportation workers play a "direct and necessary role in the free flow of goods across borders." *Id.* at 1792 (*citing Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001)).

*Saxon* also found Congress' reference to "agreements relating to wharfage" within Section 1 of the FAA supports the view that agreements relating to access to cargo-loading facilities like wharfs or airplane terminals are matters in foreign commerce such that those who load or unload from interstate cargo facilities are transportation workers. *Id.* at 1790.

Under this framework, *Saxon* concluded that a class of workers – airplane cargo loaders – are engaged in interstate commerce within Section 1 of the FAA. *Saxon*, 142 S. Ct. at 1790. Loading and unloading cargo traveling interstate demonstrates "intimate[] involve[ment]" with interstate commerce and is a "central feature" of a transportation worker. *Id.* Again, this was so even though the workers do not physically cross state lines and only worked at a single airport. *Id.*

The same result attaches here as the lower court correctly decided. Add. 9-13. Distributors play a direct and necessary role in Flowers' interstate direct-store-delivery business. *See* Statement of the Case, Section I, *supra*. Flowers' DSD segment, as the name implies, involves getting its freshly baked, out-of-state products on customers' Colorado shelves as quickly as possible. Distributors are an

integral, intimately involved part of the DSD process. Distributors' primary or even "sole" purpose is to load products arriving from other states onto their trucks and deliver it to local retail customers. *See Id.* These workers receive, load, and deliver the very out-of-state products that they ordered for the Flowers customers in their territories like Walmart and Costco right after the baked goods arrive at local cargo centers from out of state bakeries. *Id.*

Further still, Distributors pay a "warehouse fee" for access to the local warehouse or cargo loading facilities maintained by Flowers. *Id.* That payment permits them access to receive, load, and deliver the bakery products arriving from out of state. *Id.* Like the wharfage agreements discussed in *Saxon*, this arrangement to access and load from an interstate cargo facility makes Distributors intimately involved as a central part of the interstate shipment.

The fact FBC Denver is also a registered "interstate" motor carrier of bakery products with the US DOT further confirms the interstate nature of the work involved in this case and belies Flowers' attempt to depict itself as a mere bakery operation. *See* Statement of the Case, Section I, *supra*. Thus, "as a practical matter, [the Distributors' loading and delivery of out-of-state goods is] part of the interstate transportation of goods" just like airport cargo loaders. *See Saxon*, 142 S. Ct. at 1789.

The lower court and the First Circuit appropriately determined that Flowers' Distributors are directly engaged in interstate commerce. Judge Sweeney began by

rejecting Flowers' argument that the class of workers needs to physically cross state lines. Add. 10 (*citing Saxon*, 142 S. Ct at 1790-1791). The court then distinguished the present case from those involving drivers who delivered locally cook meals (i.e., fast food delivery drivers) since the "commerce" involved – the intrastate cooking and delivery of fresh meals – all occurred in state compared with "last mile" delivery workers who carry out the final and uninterrupted journey of a shelf-stable or non-food item shipped from out of state. Add. 11-12. The court weighed the evidence and concluded that "Mr. Brock is actively engaged in the transportation of Flowers' products across state lines into Colorado, by placing orders for products that arrive from out-of-state bakeries and then delivering those products to his Colorado customers, through Flowers' 'Direct-Store-Delivery' sales model. . . ." *Id.* at *12*. Thus, this class of workers directly affects the channels of interstate commerce. *Id.* In so doing, the court followed the more thorough analysis in cases looking at the entire services that the worker provides rather than focusing myopically on things like "customer facing" responsibilities. *Id.* at 12-13.

Flowers makes no effort to overturn the lower court's determinations of facts like the class of workers and what they engage in under a clear error standard. *See* Standard of Review, *supra*.

In *Canales*, Flowers Foods, Inc. and its relevant wholly owned subsidiaries in Massachusetts did not even bother to argue that distributors do not engage in

interstate commerce under Section 1 of the FAA. *Canales v. CK Sales Co., LLC*, 67 F.4th 38, 43–44 (1st Cir. 2023) ("In none of defendants' filings in the district court did they argue that plaintiffs' transportation of goods is not interstate in nature because it occurs entirely within Massachusetts."). The First Circuit then quickly rejected Flowers' position that the workers must be in the "transportation industry" to qualify for the Section 1 exemption. *Id.* at 45. Finally, the court dismissed the argument that customer service and "running a business" trump the delivery aspects of distributors' work. The court likewise rejected Flowers' self-serving depiction of these distributors as having the potential to merely supervise others who ultimately do distribution work rather than doing it themselves. *Id.* at 46.

Other post-*Saxon* authorities confirm the same – that the interstate commerce exemption "appl[ies] to workers who are engaged in the interstate movement of goods, even if they are responsible for only an intrastate leg of that movement [like Amazon last mile delivery drivers]." *Immediato v. Postmates, Inc.*, 54 F.4th 67, 77 (1st Cir. 2022). Another First Circuit court looked at the contractual relationships among the various actors involved in the commerce to determine if an intrastate trip is part of an integrated interstate journey. *Fraga v. Premium Retail Servs., Inc.*, 61 F.4th 228 (1st Cir. 2023). Where a corporate entity like Amazon or Flowers contracts to provide goods to customers at their home or business, intrastate legs of the

interstate delivery qualify as direct involvement in interstate commerce under the FAA. *Id.*

Courts in the Ninth Circuit both before and after *Saxon* approached the issue the same – that carrying out an intrastate leg of an interstate delivery qualified as engaging in interstate commerce. *See e.g.*, *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 910 (9th Cir. 2020) (FAA exempt transportation workers include "workers employed to transport goods that are shipped across state lines."). Thus, workers like UPS drivers who conduct local warehouse to customer location, intrastate, deliveries as part of a broader interstate journey are exempt. *Wynn v. United Parcel Serv., Inc.*, No. 21-CV-10029-CRB, 2022 WL 18912481, at *5 (N.D. Cal. Oct. 4, 2022) (applying *Saxon* and *Rittmann*).

Distributors are analogous to these "last mile" workers. Within its DSD business, Flowers promises delivery of fresh baked goods to its large customers and Distributors accomplish one leg of that broader interstate journey fitting the post-*Saxon* line of cases from the First and Ninth Circuits. Distributors order the products sent to their assigned warehouse from out of state bakeries with the intent to deliver the baked items to their assigned customers within their territories. *See* Statement of the Case, Section I, *supra*.

Appellants' counter-arguments hold no weight. Flowers addresses this "step two" analysis in the first section of its FAA analysis. AB, 23-29. It advances several

untenable arguments against adequate engagement in interstate commerce. First, Flowers conflates movement across state lines with the required "direct and necessary role" in interstate commerce to qualify for the exemption under the FAA. AB, 23-24. This is a rejected position. As noted above, it should be undisputed that the workers need not physically cross state lines. *Saxon*, 142 S. Ct. at 1791.

Next, Flowers argues that this group of Distributors who load and unload bakery products arriving from out of state bakeries are "fundamentally unlike" airplane cargo loaders. AB, 24. This makes no sense and Flowers makes no effort to build upon its illogical conclusion.

Flowers' also tries to compare Distributors to drivers for companies like Uber and Postmates (a food delivery application). *Id.* at 24-25. Flowers emphasizes that these workers and Distributors all drive locally, but this misses the crucial distinction between the type of commerce at issue. In this case, it is undisputed that Distributors order bakery products from predominantly out of state bakeries for their local stores which are then shipped to Distributors' local warehouses for last-mile delivery to retail stores in Colorado. Add. 8. Conversely, the cases Flowers cites lack a sufficient connection between the local drivers and potential earlier movement of goods or people across state lines. For example, while the food ingredients a restaurant uses to prepare meals may, at some point, have originated out of state, by the time a local customer orders a meal to be prepared and picked up by a driver, the driver is too far

disconnected from the earlier interstate shipment of the food ingredients. *See e.g. Immediato v. Postmates, Inc*., 54 F.4th 67, 78 (1st Cir. 2022) ("the interstate movement terminated when the [food ingredients used to prepare the delivered meals] arrived at local restaurants and grocery stores."). Likewise, fielding a local request to pick up a passenger and transport him/her (mostly) in-state lacks a sufficient connection to the potential interstate travel the passenger may have just performed. *Cunningham v. Lyft, Inc*., 17 F.4th 244, 251 (1st Cir. 2021) (distinguishing Amazon deliveries which are part of a seamless, single transaction originating out of state from ride-sharing services because the local ride service has no connection to the potential interstate journey preceding it). In either instance, the drivers of the food or passengers had no connection or involvement in the earlier possible movement of the ingredients or passengers across state lines. This is different from a situation like with Amazon or Flowers. In these settings, the goods are specifically ordered for or by an in-state customer and to be fulfilled by an out-of-state vendor and delivered in a single journey with the relevant drivers carrying out the final, last leg to get the product to the designated in-state customer. *See e.g. Rittmann v. Amazon.com, Inc.*, 971 F.3d at 910.

*Lopez v. Cintas Corp.*, 47 F.4th 428, 430 (5th Cir. 2022) is not helpful to Flowers either. As an initial matter, the case is not well developed factually. The court notes Cintas distributes work uniforms and other products nationwide and that

the plaintiff's duties involved local delivery of those products. 47 F.4th at 430. It is unclear if, for example, the local client orders a uniform which is then shipped from another state to the local warehouse and sent out for immediate delivery (as is the case with the bakery products here) or if an order is simply fulfilled from standing inventory at the local warehouse (more akin to a Postmates food order). *Id.* With this important factual nuance lacking, the court finds conflict between appellate court rulings from other jurisdictions that are not in fact in conflict. It cites two Amazon cases finding sufficient engagement in interstate commerce where the goods are ordered from out of state for in state delivery as conflicting with Postmates prepared food delivery that is ordered in state. *Id.* at 432. As noted above, these opinions readily mesh with one another as they look at whether the worker is sufficiently connected to the interstate journey or whether the workers is only connected to the in-state transaction. Where the Amazon driver is tasked with the last-leg of an interstate order for in-state delivery there is adequate engagement, whereas the Postmates driver has no connection to the restaurant's ordering of ingredients from out of state providers that are later cooked and placed into meals ordered in state. *Lopez* concludes, without any cite to authority, that engagement in interstate commerce ends as soon as the out-of-state goods are unloaded at a local warehouse. *Id.* at 433. This Court should follow the lower court's lead and not adopt this

undeveloped and overly limited approach to the FAA's carve out for workers engaged in interstate commerce. Add. 12-13.

### 4. *Flowers Alternative Considerations Miss the Mark*

Further diverging from Saxon's two-step analysis, at its second step, Flowers addresses "requirements" to fit within the FAA's residual clause that do not exist. AB, 29-39. Its effort to distract from the clear test handed down in *Saxon* and invent a new test or additional, unsupported requirements is telling.

Flowers asserts that one must work in the transportation industry to qualify under the Section 1 exemption. AB, 30-35. But *Saxon* expressly declined to adopt an industry-focused approach since the plain language of Section 1 focuses on what the worker is engaged to do. 142 S.Ct. at 1788. The inquiry is "not [about] what Southwest does generally." *Id.* Later in the same opinion, the Court rejected this industry-looking argument again. It reasoned that exempt "seamen" were a more limited class of employees that "did not include all those employed by companies engaged in maritime shipping," but rather a more limited class of individuals "who work on board a vessel." *Id.* at 1791. Despite *Saxon* expressly taking this issue up and resolving it, Flowers strangely claims this issue was not addressed. AB, 32.

Flowers' rests its rejected "industry" approach primarily on its recent 2-1 victory before the Second Circuit. AB, 31-35 (repeatedly citing this case); *see Bissonnette v. LePage Bakeries Park St., LLC*, 33 F.4th 650, 655 (2d Cir. 2022),

*amended and superseded on reh'g*, 49 F.4th 655 (2d Cir. 2022) (*Bissonnette I*); and

*Bissonnette v. LePage Bakeries Park St., LLC*, 49 F.4th 655, 660 (2d Cir. 2022)

(*Bissonnette II*). Like Flowers' proposed approach to the issue here, *Bissonnette II*

largely ignores *Saxon* as an afterthought rather than the lead case on the issue and,

inconsistent with *Saxon*, focuses on the industry in which the defendant primarily

operates rather than the class of workers. *Bissonnette II*, 49 F.4th at 661 (repeatedly

focusing on the transportation industry and finding Distributors do not meet the FAA

exemption because "those who work in the bakery industry are not transportation

workers. . . ."). This is impossible to square with *Saxon* as the dissent in *Bissonnette

II* and the several-judge dissent to the refusal to rehear *Bissonnette II en banc* all

point out. *See Bissonnette II*, 49 F.4th at 671-673 (dissent criticizing the majority for

sidestepping and ignoring Saxon); and *see Bissonnette v. LePage Bakeries Park St.,

LLC*, 59 F.4th 594, 596-597 (2d Cir. 2023) ("Bissonnette III") (finding that

Bissonnette II "continues to do the opposite of what Saxon's reasoning and holding

require" by "maintaining the 'transportation industry' requirement") and at 601-602

(similar critiques).

Next, Flowers focuses on misguided "contract of employment" arguments

that are procedurally, factually, and legally baseless. AB, 35-39. Procedurally,

Flowers failed to make this argument below and cannot make it here. *See* Vol. 1

App. 26-45 (argument not raised below); *United States v. Mora*, 293 F.3d 1213, 1216

(10th Cir. 2002) (". . . we find no reason to deviate from the general rule that we do not address arguments presented for the first time on appeal.").

The argument also ignores the facts at issue and the legal ramifications that follow. Despite Flowers' spin, it is plain that this is an *employment case* under both state and federal employment laws. Vol. 1 App., 5-25 (Complaint). Brock alleges that Flowers misclassified him as an "independent contractor" under both state and federal law when he should have been an employee entitled to state and federal wage laws. *Id.* In short, Brock alleges and is assumed to be an employee at this stage. If Brock is not an employee, this case is over and there would be nothing to send to arbitration at all.

As Flowers appropriately recognizes, the Supreme Court holds that Section 1's use of "contracts for employment" covers both employees and independent contractors: "Congress used the term 'contracts of employment' in a broad sense to capture any contract for the performance of work by workers." *New Prime, Inc. v. Oliveira*, 139 S.Ct. 532, 541 (2019). This case squarely addressed federal and state claims for wages by purported independent contractors and puts such claims within the scope of the FAA. *Id.* Flowers seeks to avoid this decision primarily by citing two non-employment or wage cases where one business entity sued another for contract remedies. *R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*, 447 F. Supp. 3d 339, 348 (W.D. Pa. 2020); *D.V.C Trucking, Inc. v. RMX Glob. Logistics*,

No. CIV.A. 05-CV-00705, 2005 WL 2044848, at *1 (D. Colo. Aug. 24, 2005). It provides not a single case holding that, under *New Prime*, an individual classified as an "independent contractor" that seeks back wages fails to qualify under Section 1. Such a case does not exist because it would contradict *New Prime*.

Flowers also erroneously asserts this is not a contract for services. AB, 36-38. This defies reality and the well pleaded allegations in the Complaint. The required Personal Guarantee executed by Brock states that he "irrevocably and unconditionally guarantee[s] to [Flowers] . . . the performance and compliance with the terms, conditions and obligations of the Distributor Agreement" executed by his corporation.[3] Vol. 1 App. 79. Among other obligations set out in the Distributor Agreement, the Distributor agrees to use "best efforts to develop and maximize the sale of [Flowers products] within the Territory and service the Territory in accordance with Good Industry Practice. . . ." *Id.* at 55. Defined Good Industry Practices include maintaining adequate supply of product, rotating products, removing stale product, and maintaining proper service and delivery schedules. *Id.* at 53. Brock likewise performs the work required to satisfy his Distributor Agreement and delivers fresh products to his Territory each day. Vol. 1 App. 265-266. And, despite its frequent flyer status in courts on these employment matters,

---

[3] The need to form and use a corporation is something Flowers also requires. Vol. 1 App. 54.

Flowers has *never* demonstrated that it properly classified workers as "independent" whereas at least one Distributor in California succeeded on summary judgment to demonstrate Flowers is an employer as a matter of law. *Goro v. Flowers Foods, Inc.*, No. 17-CV-2580 TWR (JLB), 2021 WL 4295294, at *11-14 (S.D. Cal. Sept. 21, 2021). Finally, Flowers' arguments ignore its own internal descriptions of the role Distributors play: "[t]he primary purpose of [Distributors] is to deliver bread products for us to our customers. . . . the [Distributor's] sole operating function is to delivery Flowers products." Vol. 1 App. 263.

Lastly, Flowers claims incorporation requirements and "franchising" labels in contracts drafted by hiring entities mean there cannot be an employment relationship. AB, 37-39. This Court disagrees:

> [U]nder the FLSA, the [independent contractor versus employee] inquiry is not limited to the contractual terminology between the parties or the way they choose to describe the working relationship. . . . [T]he fact that these individuals are franchisees or have formed corporations does not end the inquiry. . . ."

*Acosta v. Jani-King of Oklahoma, Inc.,* 905 F.3d 1156, 1159–60 (10th Cir. 2018). Flowers asks this Court for the opposite result reached in *Acosta*; it claims that its contractual labels and incorporation requirements mean there is no employment relationship so this case does not fit within the FAA Section 1 exemption.

The Court should disregard Flowers' attempts to change the subject or add additional, unsupported requirements to the FAA Section 1 analysis.

## II. The Arbitration Agreement Is Not Enforceable under Colorado Law

In a rather transparent attempt to distract from the plain language of the contract it drafted, Flowers begins its argument by addressing whether Colorado law can compel arbitration of the claims at issue. AB, 15-21. As the lower court correctly found, under the plain language of the Arbitration Agreement, the parties intended Colorado law to apply only to the extent "not inconsistent" with the FAA which carves out arbitration obligations for transportation workers like Distributors. It would be inconsistent for Colorado to require transportation workers to arbitrate while the FAA does not. Add. 15 (concluding it would be "wholly inconsistent with § 1" to require transportation workers to arbitrate claims). The opposite result would be strained and inconsistent with the principle that parties can only be required to arbitrate disputes they agreed to arbitrate. *Id.* (*citing Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)); *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 777 (10th Cir. 2010) (". . . . [A] party cannot be required to submit to arbitration any dispute which it has not agreed so to submit.").

The lone judge in *Bissonnette* to reach this issue agreed after (appropriately) finding that Flowers' Distributors are FAA exempt. Judge Pooler's dissent explains:

> The arbitration agreement states that it "shall be governed by the FAA and Connecticut law to the extent Connecticut law is not inconsistent with the FAA." But Connecticut law and the FAA are crucially inconsistent here: While the FAA exempts transportation workers like the plaintiffs, Connecticut law contains no analogous carve-out. See Conn. Gen. Stat. Ann. § 52-408. Given this inconsistency, the

arbitration agreement itself prohibits recourse to Connecticut law should the FAA be held inapplicable.

*Bissonnette v. LePage Bakeries Park St., LLC*, 49 F.4th 655, 673 (2d Cir. 2022) (cleaned up). This Court should find the same.

Furthermore, as Brock argued below, while Colorado's Uniform Arbitration Act ("UAA") *generally* compels claims to arbitration if the parties agreed to arbitrate, Flowers ignores that, *specific* to wage claims, Colorado permits civil actions to go forward in court. *See Lambdin v. Dist. Ct. In & For 18th Jud. Dist. of Cnty. of Arapahoe*, 903 P.2d 1126, 1130 (Colo. 1995) (*En Banc*) (recognizing that the Wage Claim Act intends to provide access to civil courts to resolve wage disputes and that the UAA does not impact this).[4] Flowers fails to challenge this on appeal providing another basis to reject its state law argument.

Flowers' AB attempts to deflect the Court's attention away from the plain language it drafted and the impacts of Colorado law on arbitration in a wage context. First, it argues that state law can compel arbitration and that, generally speaking, the FAA's carve out for transportation workers does not carry over to state laws regarding arbitration like those in Colorado. AB, 16-18. This is unremarkable and

---

[4] While the FAA ultimately preempts such state law rules and requires courts to respect arbitration agreements like all others, it does not follow that Colorado desires this result or prefers arbitration of wage claims as Defendants proclaim. *Grohn v. Sisters of Charity Health Servs. Colorado*, 960 P.2d 722, 728 (Colo. App. 1998) (finding that, only where applicable, the FAA preempts Colorado's attempt to keep wage claims in court).

purely hypothetical. Of course, states can pass laws that apply in the absence of the FAA and those laws can compel arbitration of transportation workers' claims. Where appropriate, parties may agree to follow those state laws, too. But that does not help Flowers because it tethers the designated state law (Colorado) to the FAA and requires that state law operate consistently with the FAA which contains a transportation worker exception. Further still, Colorado has *not* elected to compel wage claims to arbitration. For each reason, these unremarkable general rules do not assist Flowers in the context of this specific case.

Next, Flowers appears to make a delegation clause argument that it did not raise sufficiently below or bother to present in its Statement of the Issues. *Compare* AB, 18 (making passing reference to the arbitrator deciding arbitrability [e.g., delegation]) *with* AB, 2 (Statement of the Issues does not mention delegation or arbitrability). Flowers failed to substantively raise this issue before the District Court, mentioning it only in a footnote. Vol. 1 App. 32. This is fatal. *See e.g.*, *In re C.W. Min. Co.*, 740 F.3d 548, 564 (10th Cir. 2014) (arguments raised in a perfunctory manner, such as in a footnote, are waived); *United States v. Judd*, 42 F. App'x 140, 144 (10th Cir. 2002) (same).

Thereafter, in discussing why it believes the lower court erred, Flowers mostly recycles the same flawed arguments addressed above which are detached from the plain language of the Arbitration Agreement it drafted. AB, 18-21. For example, it

attempts to recast its language regarding the FAA and Colorado law as "belt and suspenders." AB, 19. Not true. Belts and suspenders operate differently to achieve the same goal while the Arbitration Agreement's express language forbids Colorado law from operating differently from the FAA. To put the belt-suspenders analogy into the terms of the Arbitration Agreement, it would be like Flowers saying that the parties can wear something to keep their pants up so long as it is no different from a belt. A belt is the only available option at this point even if suspenders could do the same job *if* the parties had agreed to permit the wearing of suspenders but they did not. Flowers similarly argues that Colorado fills in gaps left by the FAA, but this, too, asks the Court to allow Colorado law to behave differently from the FAA, i.e. to go where the FAA would not go. *Id.* This is simply not what the agreement says.

The additional arguments regarding the savings clause and the fact that the FAA does not "bar" transportation workers from arbitrating claims fair no better. AB, 19. It is true that the FAA does not bar other laws from forcing transportation workers to arbitrate and that, in general, a savings clause may carve out one law that does not apply and replace it with another available law that can apply. But these general propositions are merely hypothetical as they do not address the plain language and limitations the parties to this Arbitration Agreement agreed upon. Arbitration is a matter of consent and these parties consented to arbitration only where it would be consistent with the FAA which exempts transportation workers

from arbitration obligations. *Howsam,* 537 U.S. 79, 84; *Hill*, 603 F.3d at 777. For this reason, the lower court's analysis does not violate any arbitration policies as Flowers suggests (AB, 20), it merely enforces the agreement according to its terms as it must. *Morgan*, 142 S. Ct. at 1713 ("[C]ourt[s] may not devise novel rules to favor arbitration over litigation."). To hold otherwise would be to invent an arbitration preferring interpretative cannon.

Finally, Flowers presents cases finding that, if an arbitration contract invokes the FAA and is otherwise silent on state law, once the FAA fails to apply, state law would step in and mandate arbitration. AB, 20-21. Flowers contends that the Court should treat this case like those matters that simply invoke the FAA and are silent on state law. *Id.* Again, this is hypothetical and ignores the Arbitration Agreement's plain language. It is not silent on state law; it calls for state law to apply but limits its application. Thus, this is not an "easier" case for compelling arbitration, rather, it is a case in which compelling arbitration is forbidden by the contract's plain language as well as Colorado's policy not to compel wage claims to arbitration.

## CONCLUSION

Because the FAA does not reach classes of workers directly involved in interstate transportation of goods like products baked out of state and sent to Flowers' Distributors for local delivery, the FAA does not apply. Flowers' Arbitration Agreement forbids Colorado law from applying where the FAA would

not so there is no law left to compel this claim to arbitration and Colorado law would

not do so in any case given that Appellee seeks wages.

Respectfully submitted:
Dated:   August 23, 2023                    **NICHOLAS & TOMASEVIC, LLP**

By:     _/s/ Shaun Markley_____
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, CA 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: smarkley@nicholaslaw.org

*Attorneys for Plaintiff-Appellee Angelo Brock*

## REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellee does not request oral argument.

Respectfully submitted:
Dated:   August 23, 2023        **NICHOLAS & TOMASEVIC, LLP**

By:    */s/ Shaun Markley*
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, CA 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: smarkley@nicholaslaw.org

*Attorneys for Plaintiff-Appellee Angelo Brock*

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

This brief complies with the type-volume limitation set forth in Fed. R. of App. P. 32(a)(7)(B) because it contains 8,865 words, excluding the parts of the brief exempted by Rule 32(f) and 10 Cir. R. 32(B), as counted using the word-count function on Microsoft Word software. This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word, in Times New Roman style, 14 point font.

Respectfully submitted:
Dated:   August 23, 2023        **NICHOLAS & TOMASEVIC, LLP**

By:     */s/ Shaun Markley*
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, CA 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: smarkley@nicholaslaw.org

*Attorneys for Plaintiff-Appellee Angelo Brock*

## CERTIFICATE OF SERVICE

On August 23, 2023, I e-filed this Response with the Court through CM/ECF

and served the attorneys listed below with a copy via U.S. Mail:

<div style="display:flex">

Jared Lee Palmer
OGLETREE DEAKINS
One Embarcadero Center, Suite 900
San Francisco, CA 94111
(415) 442-4810

David Lee Zwisler
OGLETREE DEAKINS
2000 South Colorado Blvd.
Tower 3, Suite 900
Denver, CO 80222
(303) 764-6800

Traci L. Lovitt
Matthew W. Lampe
Jack L. Millman
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-7830
tlovitt@jonesday.com

Amanda K. Rice
JONES DAY
150 W. Jefferson Ave.,
Suite 2100
Detroit, MI 48226

</div>

Counsel for Defendants-Appellants

Dated: August 23, 2023      **NICHOLAS & TOMASEVIC, LLP**

By:    */s/ Shaun Markley*
Shaun Markley (SBN 291785)
225 Broadway, 19th Floor
San Diego, CA 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: smarkley@nicholaslaw.org

*Attorneys for Plaintiff-Appellee Angelo Brock*