Appeal No. 23-1182

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**ANGELO BROCK,**

*Plaintiff-Appellee,*

v.

**FLOWERS FOODS, INC.; FLOWERS BAKERIES, LLC;
FLOWERS BAKING CO. OF DENVER, LLC,**

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Colorado, Case No. 1:22-cv-02413-CNS-MEH
The Honorable Charlotte N. Sweeney, District Judge

**REPLY BRIEF OF DEFENDANTS-APPELLANTS**

Jared Lee Palmer
OGLETREE DEAKINS
One Embarcadero Center, Suite 900
San Francisco, CA 94111
(415) 442-4810

David Lee Zwisler
OGLETREE DEAKINS
2000 South Colorado Blvd.
Tower 3, Suite 900
Denver, CO 80222
(303) 764-6800

Traci L. Lovitt
Matthew W. Lampe
Jack L. Millman
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-7830
tlovitt@jonesday.com

Amanda K. Rice
JONES DAY
150 W. Jefferson Ave.,
Suite 2100
Detroit, MI 48226

September 13, 2023                    *Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

I. THE ARBITRATION AGREEMENT IS ENFORCEABLE UNDER
COLORADO LAW. ..................................................................3

    A. This Court Has Appellate Jurisdiction To Resolve The
Colorado Law Issue. ....................................................3

    B. The Parties' Agreement To Arbitrate Is Enforceable Under
Colorado Law. .............................................................8

II. THE ARBITRATION AGREEMENT IS ALSO ENFORCEABLE
UNDER THE FAA. ..................................................................10

    A. Plaintiff Does Not Belong To A Class Of Workers That Play A
Direct And Necessary Role In Interstate Transportation. ..................11

    B. The Distributor Agreement Is Not A Contract Of Employment
For Transportation Services. ...........................................15

        1. The FAA exception does not apply outside the
transportation industry. ...........................................16

        2. The Distributor Agreement is not a "contract of
employment" for transportation services. ..............................19

CONCLUSION ....................................................................................22

CERTIFICATE OF COMPLIANCE ....................................................................23

CERTIFICATE OF DIGITAL SUBMISSION ..........................................................24

CERTIFICATE OF SERVICE ........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amos v. Amazon Logistics, Inc.*,
74 F.4th 591 (4th Cir. 2023) ..................................................................11, 20, 21

*Bissonnette* v. *LePage Bakeries Park St., LLC*,
49 F.4th 655 (2d Cir. 2022) ...............................................................2, 11, 16, 17

*BRM Const., Inc. v. Marais Gaylord, L.L.C.*,
181 P.3d 283 (Colo. App. 2007).......................................................................10

*Canales v. CK Sales Co., LLC*,
67 F.4th 38 (1st Cir. 2023)...............................................................................15

*Capriole v. Uber Tech., Inc.*,
7 F.4th 854 (9th Cir. 2021) ..............................................................................13

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001)...........................................................................2, 11, 18, 19

*Fraga v. Premium Retail Services, Inc.*,
61 F.4th 228 (1st Cir. 2023)........................................................................17, 18

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)...........................................................................................19

*Hamrick v. Partsfleet, LLC*,
1 F.4th 1337 (11th Cir. 2021) .......................................................................6, 14

*Harper v. Amazon.com Servs., Inc.*,
12 F.4th 287 (3d Cir. 2021) .......................................................................5, 6, 7

*Hill v. Rent-A-Ctr. Inc.*,
398 F.3d 1286 (11th Cir. 2005) ........................................................................16

*Immediato v. Postmates, Inc.*,
54 F.4th 67 (1st Cir. 2022)...............................................................................13

*Level 3 Comm., LLC v. Liebert Corp.*,
535 F.3d 1146 (10th Cir. 2008) ........................................................................10

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Lopez v. Cintas Corp.*,
47 F.4th 428 (5th Cir. 2022) ........................................................ 13, 15

*New Prime Inc. v. Oliveira*,
139 S. Ct. 532 (2019) ........................................................................ 20

*Omni Tech Corp. v. MPC Sols. Sales, LLC*,
432 F.3d 797 (7th Cir. 2005) ...................................................... 4, 6, 7

*Palcko v. Airborne Express, Inc.*,
372 F.3d 588 (3d Cir. 2004) .................................................... 5, 6, 7, 8

*Rittman v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) ........................................................... 13

*Saxon v. Sw. Airlines Co.*,
No. 19-cv-403, 2023 WL 2456382 (N.D. Ill. Mar. 10, 2023) ............. 9

*Singh v. Uber Techs., Inc.*,
67 F.4th 550 (3d Cir. 2023) .............................................................. 21

*Sw. Airlines Co. v. Saxon*,
142 S. Ct. 1783 (2022) ............................................................... *passim*

*Timpanogos Tribe v. Conway*,
286 F.3d 1195 (10th Cir. 2002) ...................................................... 5, 6

*United States v. Jarvis*,
499 F.3d 1196 (10th Cir. 2007) ........................................................ 19

*United States v. Mora*,
293 F.3d 1213 (10th Cir. 2002) ........................................................ 19

*Waithaka v. Amazon.com, Inc.*,
966 F.3d 10 (1st Cir. 2020) .......................................................... 8, 13

*Wallace v. Grubhub Holdings, Inc.*,
970 F.3d 798 (7th Cir. 2020) ............................................... 12, 14, 21

# TABLE OF AUTHORITIES
(continued)

Page(s)

STATUTES

9 U.S.C. § 1 ..................................................................................*passim*

9 U.S.C. § 16 ..................................................................................1, 3, 4, 5

# INTRODUCTION

Plaintiff does not dispute that Brock Inc. is an independent corporate entity that entered an agreement with Flowers Baking Co. of Denver, LLC ("FBC Denver") to market, sell, and distribute Flowers products exclusively within the State of Colorado. Nor does Plaintiff dispute that the Arbitration Agreement he signed in connection with that agreement covers the claims at issue here and invokes *both* Colorado law and the Federal Arbitration Act ("FAA"). Nevertheless, Plaintiff contends that he cannot be compelled to arbitrate under *any* source of law. With respect to Colorado law, Plaintiff argues that this Court should decline to exercise appellate jurisdiction and, in any event, that the Arbitration Agreement—which expressly invokes Colorado law and leaves state-law arbitrability questions to the arbitrator—somehow precludes arbitration under Colorado law. With respect to the FAA, Plaintiff claims that he is exempt from arbitration under § 1 because the agreement between Brock Inc. and FBC Denver qualifies as a "contract[] of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

There are many ways for this Court to resolve this appeal in Flowers' favor. The simplest is to remand for arbitration under Colorado law. This Court has appellate jurisdiction over that issue under 9 U.S.C. § 16(a)(1), which encompasses the entirety of the District Court's "order." In the alternative, the Court should

exercise pendent appellate jurisdiction given the close relationship between the state and federal issues.  On the merits, the parties expressly agreed that Colorado law would apply if the FAA does not.  Plaintiff's contrary interpretation of that provision flouts the parties' clear intent to arbitrate, ignores the severability clause, and renders the reference to Colorado law entirely superfluous.

If the Court reaches the § 1 question, which it need not do if it remands for the application of Colorado arbitration law, it should hold that the Arbitration Agreement does not fall within that narrow exemption for any of three independent reasons.  *First*, Plaintiff, who operates a purely intrastate business and executes purely intrastate transactions, plays no "direct and necessary role in the free flow of goods across borders" for purposes of the FAA.  *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1790 (2022).  *Second*, Plaintiff, unlike "seamen and "railroad employees," does not work in the "transportation industry."  *Bissonnette* v. *LePage Bakeries Park St., LLC*, 49 F.4th 655, 661 (2d Cir. 2022).  *Third*, the Distributor Agreement is not a "contract[] of employment of transportation workers."  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001).  Any one of these points is sufficient to require

reversal. Taken together, they easily distinguish the Distributor Agreement from the contracts § 1 was designed to capture.

This Court should reverse the decision below and remand for arbitration of Plaintiff's claims.

## ARGUMENT

## I. THE ARBITRATION AGREEMENT IS ENFORCEABLE UNDER COLORADO LAW.

### A. This Court Has Appellate Jurisdiction To Resolve The Colorado Law Issue.

This Court has jurisdiction over this entire appeal under 9 U.S.C. § 16(a)(1). In the District Court, Flowers moved under §§ 3 and 4 of the FAA, as well as under Colorado law, for a stay or dismissal pending arbitration. Vol. 1 App. 26. The District Court denied Flowers' motion in the order on appeal. And 9 U.S.C. § 16(a)(1) permits appeals of any "*order* (A) refusing a stay of any action under section 3 [of the FAA], [or] (B) denying a petition under section 4 [of the FAA] to order arbitration to proceed." (emphasis added). Because § 16(a)(1) confers jurisdiction over "orders," not issues, it extends to every issue resolved in the order on appeal—including the question whether arbitration is available under Colorado law.

Plaintiff makes no textual argument to the contrary. Plaintiff is of course correct that § 16(a)(1) does not permit "review of any denial of any arbitration

motion." Ans. Br. 2. But where an "order" refuses to grant a stay under § 3 of the FAA or to compel arbitration under § 4 of the FAA—as the decision below indisputably does—the plain text of § 16(a)(1) provides for appellate review of that "order." And nothing in the text of § 16(a)(1) limits that grant of jurisdiction to specific issues disposed of therein.

*Omni Tech Corp. v. MPC Sols. Sales, LLC*, 432 F.3d 797 (7th Cir. 2005), which Plaintiff fails even to cite, held exactly that. In that case, the parties agreed that an accounting firm would resolve certain disputes, but the contract stated that the accountants "shall[] act[] as experts and not as arbitrators." *Id.* at 798. The defendant moved to stay the case and compel resolution of the dispute by the accounting firm both under the FAA and under state law. *See id.* at 799. After the district court denied that motion, the defendant appealed—again raising arguments both under the FAA and under state law. *Id.* The Seventh Circuit exercised appellate jurisdiction under § 16(a)(1), and reversed on state-law grounds without reaching the FAA question. "Appellate jurisdiction under § 16(a)(1)(A)," the court reasoned, "depends on the existence (and denial) of a motion for stay pending arbitration, not on the movant being correct." *Id.* at 800. "If a § 3 motion is made and denied, then appellate jurisdiction exists to determine whether the denial was proper." *Id.* "And once an interlocutory order is before the court for review, we may resolve the appeal

on any proper legal ground—for it is the *order*, and not the district judge's opinion, that is on appeal." *Id.* (emphasis added). The same logic applies here.

Even assuming § 16(a)(1) did not directly confer appellate jurisdiction over the state-law question, this Court may exercise pendent appellate jurisdiction "where the otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is 'necessary to ensure meaningful review' of the appealable one.'" *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1200 (10th Cir. 2002) (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 929 (10th Cir. 1995)). Applying a similar standard, the Third Circuit has squarely held that appellate courts may exercise pendent appellate jurisdiction over a district court's denial of a motion to compel arbitration on state law grounds if the district court also denied the motion on federal grounds. *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 594–95 (3d Cir. 2004) (exercising pendent appellate jurisdiction over state-law arbitration argument in § 1 case where "the FAA exemption and Washington state law issues arise from a single arbitration agreement"); *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 292 n.3 (3d Cir. 2021) ("We have pendent jurisdiction over whether arbitration may be compelled under state law when state law issues arise from a single arbitration agreement that

provides alternative grounds for the arbitration of all claims." (internal quotation marks omitted)).[1]

This Court should take the same course. Here, as in *Palcko*, the federal and state issues "arise from a single arbitration agreement." *Palcko*, 372 F.3d at 594. And here, as in *Palcko*, Plaintiff's claims all "arise from the same set of facts related to [his] conditions as [an alleged] employee." *Id.* "Thus, not only does sufficient overlap of facts exist to warrant plenary review, but the [Colorado] state law arbitration issue is so closely intertwined with the FAA claim that . . . taking of pendent appellate jurisdiction over the former is necessary to ensure meaningful review of the District Court's order in its entirety." *Id.* at 594–95.

Plaintiff does not attempt to distinguish *Palcko* and its progeny or explain why those cases were wrongly decided. *See* Ans. Br. 3. Instead, he appears to argue that pendent appellate jurisdiction is unavailable because Flowers claims that state law provides an independent basis to compel arbitration—which, according to Plaintiff, must mean that the federal and state issues are not closely intertwined. *See id.* As an initial matter, that was true in *Palcko*, *Harper*, and *Omni Tech* as well. *See*

---

[1] The Eleventh Circuit declined to exercise pendent appellate jurisdiction over a state-law issue in *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337 (2021), but in so doing applied "a different, and (apparently) narrower, test for pendent appellate jurisdiction." *Id.* at 1353–54. Plaintiff does not argue this narrower test applies, and it does not. *Compare Timpanogos Tribe*, 286 F.3d at 1200 (applying Tenth Circuit test), *with Palcko*, 372 F.3d at 594–95 (applying similar Third Circuit test).

*Palcko*, 372 F.3d at 594, 596 (finding that the FAA did not apply but remanding for arbitration under state law); *Harper*, 12 F.4th at 294 (assuming without deciding that the FAA did not apply but remanding for consideration of state-law arbitrability); *Omni Tech*, 432 F.3d at 800 (finding it "unnecessary" to decide whether federal law applied because arbitration was required under state law). More fundamentally, Plaintiff simply misunderstands the nature of pendent appellate jurisdiction. That doctrine does not apply only to cases where two legal issues rise or fall together. (If it did, the doctrine would hardly be of much use.) Instead, it applies where two arguments turn on the same facts, where they implicate the same claims, and where resolving one moots the other. *See Palcko*, 372 F.3d at 594–95.

All of that is true here. Indeed, the District Court denied Flowers' motion to compel arbitration under state law for one reason and one reason only: Because it (wrongly) believed that the § 1 exemption applied. *See* Add. 15 (explaining that Plaintiff "qualifies for § 1's transportation exemption" and, as a result, that "applying Colorado law to require Mr. Brock to arbitrate would be inconsistent with the Act"). And Plaintiff makes the very same argument on appeal. *See generally* Ans. Br. 33–37. Flowers, of course, disagrees. On its view, arbitration is available under state law regardless of whether § 1 applies. *See infra* Part I.B. But there is no denying that the crux of the parties' dispute is the relationship between state and federal law under the Arbitration Agreement. Accordingly, the federal and state

issues are "inextricably intertwined," such that the "taking of pendent appellate jurisdiction over the [state law issue] is necessary to ensure meaningful review of the District Court's order in its entirety." *Palcko*, 372 F.3d at 594–95.

## B. The Parties' Agreement To Arbitrate Is Enforceable Under Colorado Law.

On the merits of the state-law question, Plaintiff concedes "that the FAA does not bar other laws from forcing transportation workers to arbitrate and that, in general, a savings clause may carve out one law that does not apply and replace it with another available law that can apply." Ans. Br. 36. Those concessions effectively resolve this case. "[T]he effect of Section 1 is merely to leave the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted." *Palcko*, 372 F.3d at 596 (internal quotation marks omitted). So even assuming § 1 applies and arbitration is unavailable under the FAA, the savings clause kicks in and requires arbitration under Colorado law. *Cf., e.g.*, *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 27 (1st Cir. 2020) ("Because the FAA is inapplicable, the portions of the governing law and dispute resolution sections selecting the FAA must be stricken from the Agreement, leaving [Colorado] law as the default choice of law for assessing the enforceability of the arbitration . . . provisions[.]").

Plaintiff nevertheless insists that arbitration is unavailable because the Agreement says that it "shall be governed by the FAA and <u>Colorado</u> law to the extent

Colorado law is not inconsistent with the FAA." Vol. 1 App. 86. And according to Plaintiff, "[i]t would be inconsistent for Colorado to require transportation workers to arbitrate while the FAA does not." Ans. Br. at 33. But Plaintiff fails to explain *why* he believes the two bodies of law are inconsistent. As Flowers demonstrated in its Opening Brief (at 16–18), they are not: Colorado law simply speaks to a set of agreements that federal law does not. That is, the FAA provides only that "*nothing herein contained shall apply* to contracts of employment of . . . workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (emphasis added)). The Act declares *itself* (and only itself) inapplicable to certain contracts of employment. The FAA does *not* say that such contracts shall be immune from arbitration—a provision that would introduce inconsistency. Accordingly, courts around the country—including the district court on remand in *Saxon v. Sw. Airlines Co.*, No. 19-cv-403, 2023 WL 2456382, at *4–5 (N.D. Ill. Mar. 10, 2023)—have enforced arbitration agreements under state law even where the "transportation worker" exemption applies. *See* Opening Br. 17–18 (collecting cases). It is perfectly consistent to hold the FAA inapplicable.

Thus, under Flowers' interpretation of the Agreement, the FAA and Colorado law can be simultaneously enforced, without conflict or inconsistency between the two. Flowers' interpretation also furthers the parties' unambiguous intent to arbitrate. It respects the Agreement's severability clause, which confirms that the

rest of the Agreement, including the commitment to arbitrate disputes, must "continue in full force and effect" even if any specific provision is found inapplicable or invalid. Vol. 1 App. 85–86. And it avoids turning the Colorado law language into surplusage. *See* Opening Br. 20.

Plaintiff's interpretation does none of those things. Plaintiff does not even attempt to articulate a textual argument. He affords no weight to the severability clause. And he ignores the fundamental precept of Colorado law that "every relevant provision" of a contract "must be . . . given effect." *Level 3 Comm., LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008).

This Court should enforce the parties' agreement to arbitrate and remand for arbitration under Colorado law.[2]

## II. THE ARBITRATION AGREEMENT IS ALSO ENFORCEABLE UNDER THE FAA.

In all events, arbitration is required under the FAA. Flowers' Opening Brief explained that § 1 does not apply for a host of independent reasons. *See* Opening Br. 21–39. Plaintiff's Answering Brief offers no persuasive response. He begins by

---

[2] In so doing, this Court need not address Plaintiff's suggestion that his state-law wage claims are not arbitrable under Colorado's Wage Claim Act. Ans. Br. 34–35. The District Court did not reach that argument and can address it on remand. In any event, the parties clearly delegated "[a]ny issues concerning arbitrability of a particular . . . claim" to the arbitrator in the first instance. Vol. 1 App. 85; *see BRM Const., Inc. v. Marais Gaylord, L.L.C.*, 181 P.3d 283, 285 (Colo. App. 2007) (parties can agree to have arbitrator decide "whether a particular dispute must be arbitrated").

insisting that the § 1 question turns on disputed issues of fact. *See* Ans. Br. 11–13. But he identifies no relevant facts that are actually in dispute. He then devotes an entire section to the argument that "court[s] may not devise novel rules to favor arbitration over litigation." Ans. Br. 17 (quoting *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022)). But this case is about the interpretation and application of § 1, not any novel, court-devised rule. And Plaintiff fails even to acknowledge the Supreme Court's instruction that § 1's residual clause must be afforded "a narrow construction." *Circuit City*, 532 U.S. at 119.

Plaintiff's more specific arguments fare no better. Undisputed facts establish that Plaintiff belongs to a class of workers that plays no "direct and necessary role" in cross-border transportation within the meaning of the FAA, *Saxon*, 142 S. Ct. at 1790; he does not work in the "transportation industry," *Bissonnette*, 49 F.4th at 661; and the Distributor Agreement is not a "contract of employment" for transportation services. *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 596 (4th Cir. 2023). In all of these respects, Plaintiff in no way resembles the "seamen" and "railroad employees" § 1 was designed to cover.

## A. Plaintiff Does Not Belong To A Class Of Workers That Play A Direct And Necessary Role In Interstate Transportation.

Plaintiff acknowledges (at 25) that § 1 applies only to classes of workers that play a "direct and necessary role in the free flow of goods across borders." *Saxon*, 142 S. Ct. at 1790. There is no dispute, moreover, that Plaintiff distributes Flowers

products exclusively within the State of Colorado, never travels across state lines, and never loads goods onto (or unloads goods from) trucks traveling interstate. *See* Add. 8–10; Ans. Br. 7–9, 18–21, 28–29. Plaintiff makes three primary arguments that he is nevertheless engaged in cross-border transportation. All are meritless.

*First*, Plaintiff tries to analogize himself to the airplane cargo loaders in *Saxon*. *See* Ans. Br. 19–20. But the crucial point in *Saxon* was that the cargo loaders "physically load[ed] and unloaded[ed] cargo on and off planes *traveling in interstate commerce*." *Saxon*, 142 S. Ct. at 1789 (emphasis added). In contrast, Plaintiff effectively admits that the trucks onto which he loads and unloads goods travel exclusively *intrastate*. *See* Ans. Br. 9 ("Plaintiff and other Distributors in Colorado arrive at their warehouses just as or hours after the out-of-state products are delivered to their warehouse and unloaded for them. . . . They sign off on their orders, load their products from the warehouse onto their trucks, and begin delivering to the customers in their territory."); *see* Vol. 1 App. 266. Accordingly, unlike in *Saxon*, the class of workers to which Plaintiff belongs is not "connected . . . to the act of moving . . . goods across state or national borders." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020) (Barrett, J.).

*Second*, Plaintiff contends that Flowers Independent Distributors "are analogous to th[e] 'last mile' workers" that some courts have found sufficiently connected to interstate transportation. Ans. Br. 23–25. As an initial matter, it is an

open question whether true "last mile" drivers are engaged in interstate commerce for purposes of § 1. *See Saxon*, 142 S. Ct. at 1789 n.2 (reserving this question); *see, e.g., Lopez v. Cintas Corp.*, 47 F.4th 428, 430 (5th Cir. 2022) (holding that § 1 does not apply to a "local delivery driver"). In any event, this is not a "last mile" case. In "last mile" cases like *Waithaka*, 966 F.3d 10, and *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), courts have held that local delivery drivers are engaged in interstate transportation for purposes of the FAA when they are "part of a *continuous* interstate transportation" system and execute "interstate transactions" that "do not conclude until the packages reach their intended destinations," *Rittman*, 971 F.3d at 916 (emphasis added). But where the transportation is *not* continuous, courts uniformly hold that § 1 does not apply. *See, e.g.*, *Immediato v. Postmates, Inc.*, 54 F.4th 67, 78 (1st Cir. 2022); *Capriole v. Uber Tech., Inc.*, 7 F.4th 854, 861 (9th Cir. 2021). As Flowers demonstrated in its Opening Brief (at 23–24), that describes this case to a "T." *See, e.g.*, Vol. 1 App. 55 ¶ 4.1 (making clear that Brock Inc. takes "[t]itle" to the goods it distributes upon delivery, and then bears the "risk of loss"); Add. 8. (explaining that Plaintiff sells Flowers products to "*his* customers" (emphasis added)); *see also* Chamber of Commerce Amicus Br. 15–17 (explaining how "the class of workers here does not provide last-mile delivery services as part of a single, unbroken interstate transaction" and thus are not "'last-mile' drivers").

*Third*, Plaintiff repeatedly falls back on the argument that the baked goods he

distributes were produced out of state. *See, e.g.*, Ans. Br. 18, 20–22, 24–27 (arguing that Plaintiff is involved in interstate transportation because he sells and distributes "out-of-state" products). But § 1 "is directed at what the class of workers is engaged in, and not what it is carrying." *Hamrick*, 1 F.4th at 1350. "The word 'workers' directs the interpreter's attention to 'the performance of work.'" *Saxon*, 142 S. Ct. at 1788 (quoting *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 541 (2019)). And "the word 'engaged' … similarly emphasizes the actual work that the members of the class, as a whole, typically carry out." *Id.* (citation omitted). Accordingly, courts have consistently rejected the proposition that intrastate transportation workers are covered by § 1 whenever the goods or people they transport previously crossed state lines. *See, e.g.*, *Hamrick*, 1 F.4th at 1350 (fact "that the goods that are being transported have crossed state lines" is insufficient); *Wallace*, 970 F.3d at 802 ("[T]o fall within the exemption, the workers must be connected not simply to the goods, but to the act of moving those goods across state or national borders."); *see also* Chamber of Commerce Amicus Br. 12–15.

Plaintiff's remaining points—a smattering of disconnected arguments—are similarly unconvincing. The fact that Brock Inc. pays a "warehouse fee," Ans. Br. 21, says nothing about whether Plaintiff is engaged in cross-border transportation. As Flowers explained in its Opening Brief (at 26 n.5), the fact that FBC Denver is a "registered 'interstate' motor carrier" with the Department of Transportation, Ans

Br. 21, has nothing to do with § 1. Plaintiff's bald assertion that the "First Circuit appropriately determined that Flowers' Distributors are directly engaged in interstate commerce," Ans. Br. 21, is simply wrong. *See Canales v. CK Sales Co., LLC*, 67 F.4th 38, 43–44 (1st Cir. 2023) (expressly declining to decide "whether plaintiffs' intrastate transportation of the baked goods is a continuation of the same interstate journey that brings the goods to the Massachusetts warehouse or a separate, purely intrastate journey"). And Plaintiff has no answer for *Lopez*, other than to urge this Court to disregard the Fifth Circuit's approach as "overly limited." Ans. Br. 27–28.

The bottom line is that no court has endorsed Plaintiff's sweeping view of "interstate commerce," which would encompass everything from local paperboys to 7-Eleven franchise owners. The class of workers to which Plaintiff belongs is much further removed from interstate transportation within the meaning of the FAA than many classes of workers to which courts have uniformly concluded § 1 does not apply. *See* Opening Br. 24–26 (discussing cases involving rideshare drivers, food delivery drivers, and other local delivery drivers). Plaintiff does not belong to a class of workers that plays a "direct and necessary role in the free flow of goods across borders" for purposes of the FAA. *Saxon*, 142 S. Ct. at 1790.

### B. The Distributor Agreement Is Not A Contract Of Employment For Transportation Services.

Even putting the "interstate" issue to one side, the Distributor Agreement is not a "contract[] of employment of transportation workers." *Circuit City*, 532 U.S.

at 109.  *First*, § 1's residual clause is limited to "workers involved in the transportation industry."  Opening Br. 30–35 (quoting *Bissonnette*, 49 F.4th at 660).  *Second*, the Distributor Agreement is not a "contract of employment" for the provision of transportation services.  *Id.* at 35–39.

### 1. The FAA exception does not apply outside the transportation industry.

Flowers' Opening Brief demonstrated—as a matter of text, history, and persuasive authority from both the Second and Eleventh Circuits—that (1) the "transportation worker[]" exemption "is limited to workers involved in the transportation industry" and (2) "Plaintiff does not belong to a class of workers in the transportation industry."  Opening Br. 30–35 (quoting *Bissonnette*, 49 F.4th at 660); *see also Hill v. Rent-A-Ctr. Inc.*, 398 F.3d 1286, 1290 (11th Cir. 2005) ("[I]t is apparent Congress was concerned only with giving the arbitration exemption to 'classes' of transportation workers within the transportation industry.").  Plaintiff does not even attempt to dispute the latter point.  On the former, he does not meaningfully engage with § 1's text, its history, or the Second and Eleventh Circuit authority endorsing Flowers' interpretation.  Instead, he maintains that *Saxon* "expressly t[ook] this issue up and resolv[ed] it."  Ans. Br. 28–29.

That is simply wrong.  The Supreme Court had no occasion to address the "transportation industry" issue in *Saxon* because "the plaintiff worked for an airline" that was "in the business of moving freight."  *Bissonnette*, 49 F.4th at 661.

Nevertheless, *Saxon*'s analysis is consistent with the proposition that a "class of workers" must at least work in the transportation industry to qualify as "transportation workers." To be sure, *Saxon* also "teaches[] [that] not *everyone* who works in a transportation industry is a transportation worker." *Id.* (emphasis added) (discussing *Saxon*); *see Saxon*, 142 S. Ct. at 1791 (explaining, for example, that § 1's reference to "seamen" does "not include all those employed by companies engaged in maritime shipping"). But "the distinctions drawn in *Saxon*" *among* transportation industry workers "do not come into play" where, as here, an individual works in a different industry entirely. *Bissonnette*, 49 F.4th at 661.

No Court of Appeals—including the First Circuit, which split with the Second and Eleventh Circuits and became the first and only appellate court to apply § 1 to workers outside the transportation industry—has interpreted *Saxon* the way Plaintiff does. *See Fraga v. Premium Retail Services, Inc.*, 61 F.4th 228, 235 (1st Cir. 2023) ("*Saxon*'s holding does not strictly foreclose the possibility that being employed in the transportation industry may be a necessary threshold criterion for qualifying as a transportation worker."). In fact, even the attorney representing the plaintiff in *Saxon* conceded that § 1 applies only to "transportation industry" workers. *See* Transcript of Record at 57:23–58:11, *Saxon*, 142 S. Ct. 1783 (No. 21-309) ("[I]f you look, in 1925, railroad employees and seamen were really people who worked in industries that shipped goods for the public.") "[I]f we're talking about a company

that is shipping its own goods," she acknowledged, "those people likely wouldn't have been railroad employees or seamen at the time. And, similarly, those people likely . . . wouldn't be exempt from the statute here." *Id.* at 58:1–6.

This Court should join the Second and Eleventh Circuits in holding exactly that. The "transportation industry" rule accords with the text of § 1, as the residual clause is "controlled and defined by reference to the enumerated categories of workers which are recited just before it," *Circuit City*, 532 U.S. at 115—and both of those categories encompass workers in the transportation industry. *See* Opening Br. 30–31. It reflects § 1's history and purpose. *See id.* at 31–32; *Saxon*, 142 S. Ct. 1783 (No. 21-309), Tr. 57:23–61:21. And it heeds the Supreme Court's instruction that § 1 must be "narrow[ly]" construed. *Circuit City*, 523 U.S. at 118. The First Circuit's outlier position, by contrast, lacks any textual or historical support. *See* Opening Br. 33 (discussing *Fraga*, 61 F.4th 228). It also threatens to transform § 1 from a narrow exemption to a gaping loophole that will touch every company that makes, sells, and distributes products. *See* Opening Br. 32–34; *see also* Chamber of Commerce Amicus Br. 25–32 (discussing how an overly expansive reading of § 1 "will generate time-consuming and costly litigation over [§ 1's] application" and "deprive businesses and individuals of the benefits of arbitration protected by the FAA") .

## 2. The Distributor Agreement is not a "contract of employment" for transportation services.

Even assuming that § 1 could apply outside the transportation industry, the Distributor Agreement between Brock Inc. and FBC Denver is not a "contract[] of employment of transportation workers." *Circuit City*, 532 U.S. at 109; *see* Opening Br. 35–39. That is true both because it is not a "contract of employment" at all and because it does not require that Plaintiff personally provide any transportation services.

Plaintiff attempts to dodge the "contract of employment" issue on the ground that it was not adequately briefed below. Ans. Br. 29–30. But this Court is free to address new issues on appeal "where the argument involves a pure matter of law and proper resolution of the issue is certain." *United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007) (collecting cases). Indeed, even the case on which Plaintiff relies in arguing forfeiture did exactly that. *See United States v. Mora*, 293 F.3d 1213, 1218 (10th Cir. 2002) (deciding to address an "argument[] raised for the first time on appeal"). This Court should take the same course here. Whether the Distributor Agreement qualifies as a "contract of employment" under § 1 is "a pure matter of law." *Jarvis*, 499 F.3d at 1202. Its resolution is also "certain," *id.*, because the Supreme Court has squarely held (in an employment case, no less) that § 1 does not apply where "the arbitration clause [at issue] is not contained in a contract of employment." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23–25 & n.2

(1991).  And business-to-business agreements for services plainly do not qualify as "contracts of employment" under § 1.  *See, e.g.*, *Amos*, 74 F.4th at 596.

On the merits, Plaintiff insists that the Distributor Agreement is a "contract of employment" because, in his view, Flowers should have classified him as an employee.  Ans. Br. 30–31.  But the question under § 1 is not whether a plaintiff should be treated as an employee or an independent contractor under the FLSA or state wage-and-hour laws.  *See New Prime, Inc.*, 139 S. Ct. at 541.  Instead, the question is whether the contract in which the arbitration provision appears is an agreement "for the performance of work by workers."  *Id.*  And the Distributor Agreement—which is between two businesses and does not obligate Plaintiff to perform any work personally—is not.[3]  *See* Opening Br. 35–37.  Indeed, this case is on all fours with the Fourth Circuit's recent ruling in *Amos*, which held (again in an employment case) that a business-to-business contract that "contain[ed] none of the hallmarks of a traditional employment contract, such as provisions regarding salary,

---

[3] The Personal Guarantee is not a "contract for the performance of work by workers" either.  *New Prime*, 139 S. Ct. at 541; *see* Ans. Br. 31–32.  In signing the Personal Guarantee, Plaintiff agreed that if he did not "ensure the timely and complete performance" of Brock Inc.'s contractual obligations he would be liable for breach damages.  Vol. 1 App. 79.  But nowhere did he personally agree to "perform work" for FBC Denver.  *New Prime*, 139 S. Ct. at 539; *see also* Vol. 1 App. 64 ¶ 16.2 (confirming that the Distributor Agreement "does not require that [Brock Inc.]'s obligations hereunder be conducted personally" by anyone).  Nor does the Personal Guarantee bear the other "hallmarks of a traditional employment contract."  *Amos*, 74 F.4th at 596.

- 20 -

benefits, and leave time," was not a "contract of employment" for purposes of § 1. 74 F.4th at 596.

In any event, even assuming the Distributor Agreement were a "contract of employment," it only confirms that Plaintiff is not a "transportation worker." *See* Opening Br. 37–39. To the contrary, the Distributor Agreement makes clear that he is the owner of an independent franchise business who had no obligation to perform any transportation work for Flowers. *See id.*

The fact that Plaintiff sometimes "load[s] and unload[s] bakery products" in the course of his work, Ans. Br. 18–19, makes no difference. As Flowers explained in its Opening Brief (at 37–39), the application of § 1 turns not on how an individual chooses to spend his working time but on the work that "members of the class, as a whole, typically carry out." *Saxon I*, 142 S. Ct. at 1788; *see also Singh v. Uber Techs., Inc.*, 67 F.4th 550, 560 (3d Cir. 2023) (explaining that "engagement with interstate commerce must be typical of the work that class members generally do," not just work done by "a small proportion of the class"). Courts assess a class of workers' "typical duties" by looking, among other things, at "the contents of the parties' agreements." *Singh*, 67 F.4th at 557; *see also Wallace*, 970 F.3d at 801 (holding that § 1 applies to a class of workers only when "the interstate movement of goods is a central part of the[ir]. . . job description"). Because the Distributor Agreement makes clear that Independent Distributors like Plaintiff are business

owners who need not perform any transportation work personally, they are not transportation workers under § 1—regardless of whether Plaintiff chooses to spend his time loading and unloading products.  *See* Opening Br. 37–39.  And if there is any doubt about the typical responsibilities of Independent Distributor owners like Plaintiff, this Court should remand for factfinding on that score.  *See id.* at 39.

## <u>CONCLUSION</u>

The Court should reverse the District Court's order and remand for arbitration of this dispute.


Dated: September 13, 2023

Jared Lee Palmer
OGLETREE DEAKINS
One Embarcadero Center, Suite 900
San Francisco, CA 94111
(415) 442-4810

David Lee Zwisler
OGLETREE DEAKINS
2000 South Colorado Blvd.
Tower 3, Suite 900
Denver, CO 80222
(303) 764-6800

Respectfully Submitted,

*/s/ Traci L. Lovitt*
Traci L. Lovitt
Matthew W. Lampe
Jack L. Millman
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-7830
tlovitt@jonesday.com

Amanda K. Rice
JONES DAY
150 W. Jefferson Ave.,
Suite 2100
Detroit, MI 48226

*Counsel for Defendants-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,427 words, excluding the parts of the brief exempted by Rule 32(f) and 10 Cir. R. 32(B), as counted using the word-count function on Microsoft Word 2016 software.

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman style, 14 point font.

Dated: September 13, 2023        Respectfully submitted,

*/s/ Traci L. Lovitt*
Traci L. Lovitt

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing Reply Brief of Defendants-Appellants: (1) all required privacy redactions have been made per 10th Cir. R. 25.5; (2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents; (3) the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Malware Protection, Product Version 1.397.895.0, updated September 13, 2023, and according to the program is free of viruses.

Dated: September 13, 2023      Respectfully submitted,

*/s/ Traci L. Lovitt*

Traci L. Lovitt

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2023, I electronically filed the original of the foregoing Reply Brief of Defendants-Appellants with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

Dated: September 13, 2023          Respectfully submitted,

*/s/ Traci L. Lovitt*
Traci L. Lovitt